UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON SZYDLEK,

                Petitioner,              Case No. 12-cv-14670
                                          Hon. Matthew F. Leitman

v.

SHAWN BREWER[1],

                Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS, (4) GRANTING MOTIONS TO SUPPLEMENT (ECF ## 40, 45), AND (5) DENYING MOTION FOR INJUNCTIVE RELIEF (ECF #42)

Petitioner Jason Szydlek ("Petitioner") is a state prisoner in the custody of

the Michigan Department of Corrections. Petitioner has filed a Petition for Writ of

Habeas Corpus challenging his state-court convictions of unarmed robbery, MCL §

_____

[1] The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rule 2(a), 28 U.S.C. § 2254. On August 16, 2013, the Court entered an order in which it amended the case caption to name Jeffrey Larson ("Larson") as the Respondent in this matter.  (*See* ECF #13.)  Larson was the warden of the Central Michigan Correctional Facility where Petitioner was then incarcerated.  (*See id.*)  Since the entry of that Order, Petitioner has been transferred to the Parnall Correctional Facility, where Shawn Brewer ("Brewer") is the warden. Therefore, the Court now substitutes Brewer as Respondent above.

1

750.530, unlawful imprisonment, MCL § 750.349b, and assault with intent to commit great bodily harm less than murder, MCL § 750.84 (the "Petition"). (*See* ECF ## 1, 27.)[2] For the reasons discussed below, the Court denies the Petition.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves charges brought against Petitioner arising out of the assault and robbery of Daniel Mavity ("Mavity"). At trial, Mavity testified that on the evening of March 7, 2009, his car broke down and he called Petitioner for a ride. Mavity said that Petitioner then arrived with another man, Steve Conkle ("Conkle"). According to Mavity, Petitioner dropped Conkle off and then drove Mavity to Petitioner's apartment.

Mavity testified that he and Petitioner watched television and ate, and he fell asleep on a couch. Mavity said that sometime between 3:00 a.m. and 5:00 a.m. he awoke and found that several items were missing from his coat: a cell phone, a

---

[2] Petitioner initially filed the Petition on October 23, 2012. (*See* ECF #1.) On March 19, 2014, Petitioner filed a motion to amend the Petition. (*See* ECF #27.) By written order dated March 3, 2015, the Court granted Petitioner leave to amend the Petition and held that "[f]or purposes of this action, the Amended Petition shall be deemed to include the claims asserted in (1) the Original Petition (ECF #1 at Pg. ID 1-473), and (2) the Motion to Amend (ECF #27, Pg. ID 1554-1883)." (ECF #36 at 2, Pg. ID 1949.) In addition, on April 21, 2015, and again on June 30, 2015, Petitioner filed motions for leave to supplement the Petition. (*See* ECF ## 40, 45.) The Court grants Petitioner's motions to supplement. For ease of reference, when the Court refers to the "Petition," it is referring to Petitioner's claims in his original petition (ECF #1), Petitioner's March 19, 2014, motion to amend (ECF #27), and his supplemental submissions (ECF ## 40, 45).

2

necklace, a bottle of muscle relaxants, and about $40.00. According to Mavity, he then looked around the apartment and found his items on top of a dresser in Petitioner's bedroom. Mavity said he put his items back in his pocket and then returned to the couch to sleep.

Mavity testified that he later awoke a second time to Petitioner punching him in the face. Mavity said his hands and feet were then bound and he had a gym sock stuffed into his mouth. Mavity asserted that Petitioner then began choking Mavity until Mavity lost consciousness.

Mavity testified that Petitioner then dragged him on his stomach across carpeting into a bathroom. Petitioner filled the bathtub and dunked Mavity's head in the water and demanded that Mavity give him back the items. According to Mativy, Petitioner removed the gag, and Mavity told him the items were in his pocket. Petitioner then dragged Mavity into a bedroom where he left him for several hours. Eventually Petitioner returned and let Mavity leave the apartment – without his items.

Mavity says that as he started to walk home, his appearance drew the attention of several people. A woman who noticed Mavity called her husband, Steve Arnold ("Arnold"), and Arnold then arrived and offered to give Mavity a ride. Arnold testified that he drove Mavity to the home of Mavity's cousin, Allen

3

Doyon ("Doyon"). At Doyon's home, Mavity looked in a mirror and saw that he had bruises on his chest, lumps on his head, two black eyes, torn corners on his mouth, lacerations on his wrists, and a rug burn on his stomach and knees.

Arnold testified that when he picked Mavity up, Mavity's face was bruised and bloody, and he saw marks on Mavity's wrists. Mavity told Arnold that he had been beaten, robbed, and tied up, and he identified Petitioner's apartment complex as the location of the incident. Doyon similarly described Petitioner's appearance on the day of the incident. Photographs taken the day after the incident by Doyon, and a set taken by the sheriff's department several days after the incident, were admitted into evidence at Petitioner's trial. (*See* ECF #24-9 at 145-151, Pg. ID 1146-1152.)

Initially, Mavity refused to go to the police. He tried to recover his items from Petitioner, but Petitioner never responded to Mavity's requests and would not answer his door. Mavity eventually went to the police on March 12, 2009. After speaking with police, Mavity went to the hospital. Police officers obtained a search warrant for Petitioner's apartment, but officers did not find Mavity's property at that location.

The Oakland County Medical Examiner testified at Petitioner's trial that the injuries depicted in the photographs of Mavity were consistent with someone being

bound, gagged, dragged across a floor, punched in the face, and having their head repeatedly forced underwater.

The defense presented several witnesses who testified about Petitioner's health problems in an effort to show that Petitioner was not physically capable of assaulting Mavity as Mavity described. For example, Deneen Hawkins ("Hawkins") testified that she had been Petitioner's neighbor since 2007. Hawkins testified that Petitioner had severe back problems, and that when she took him to doctor appointments he could barely walk. In addition, Anthony Incammicia testified that he had known Petitioner for five to seven years, and he did not believe that Petitioner could lift anything and had trouble walking. Finally, Sana Atisha testified that Petitioner had severe back problems.[3]

Petitioner also testified in his own defense. He testified that on the day of the incident, he received several calls from Mavity asking for a ride. Petitioner confirmed that he went to pick up Mavity with Conkle, but that contrary to

---

[3] Petitioner's trial counsel also sought to introduce testimony about Petitioner's history of back problems – and thus Petitioner's inability to commit the alleged crime – from an additional witness: a physician who treated Petitioner (Dr. Englemann). But, as described below, Petitioner's counsel told the court that even though he (counsel) had worked with the prosecutor to serve Dr. Englemann with a subpoena requiring his appearance at trial, Dr. Engelmann had ignored the subpoena.

5

Mavity's testimony, the three men visited locations in Detroit and White Lake Township, and then proceeded to Conkle's home, where the three remained for the rest of the night. Petitioner said that when he awoke the next morning, Mavity was gone. Petitioner said he never saw any injuries on Mavity.  Petitioner further testified that he had a large quantity of prescription pain medications in his possession due to his back problems, and that Mavity tried to extort those prescription medications and $500 from him.

Following closing arguments and instructions, the jury found Petitioner guilty. Petitioner thereafter admitted to having two prior felony convictions, and he was sentenced as an habitual felony offender to concurrent terms of incarceration of ten to thirty years.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals.  Petitioner was appointed three attorneys during his appeal but each withdrew after they experienced differences with Petitioner as to how to proceed on appeal. Petitioner's fourth (and final) appellate counsel filed a motion to remand with the Michigan Court of Appeals, asserting that Petitioner's case should be sent back to the trial court so that it could hold an evidentiary hearing. The motion to remand claimed that an evidentiary hearing was required to show that Petitioner's trial counsel was ineffective for failing to investigate

6

whether Mavity lied when he denied that he and Petitioner went to locations in Detroit and White Lake on the evening in question. The motion to remand also sought to establish that Petitioner's trial counsel was ineffective for failing to secure the testimony of Dr. Engelmann, who would have testified regarding Petitioner's ability to assault Mavity in the way Mavity described. (*See* ECF #24-9 at 36-45, 51-59, Pg. ID 1037-1046, 1052-1060.)  The Michigan Court of Appeals denied the motion to remand "for failure to persuade the Court of the necessity of a remand at this time." (*Id.* at 105, Pg. ID 1106.)

Petitioner's Appellate counsel then filed a substantive brief on appeal with the Michigan Court of Appeals which raised the following claims:

> I.   Defendant contends that he was denied the effective assistance of trial counsel under the Sixth Amendment and alleges counsel: (1) failed to investigate a defense and (2) failed to call a witness.
>
> II.  Defendant contends that he was erroneously scored 25 points under OV 13 as to each count, and was misscored points under OV 7, OV 8, and OV 10 on counts one, two, and three, respectively. If true, defendant's guidelines range declines on each count and he must be resentenced.

Petitioner also filed a supplemental *pro se* brief raising the following additional claims:

I.    Defendant was denied the effective assistance of
      trial counsel under the Sixth Amendment, when
      counsel (1) failed to disclose conflict of interest;
      (2) failed to adequately investigate; (3) failed to
      move the court to suppress defendant's prior
      criminal record; (4) failed to object to improper
      sentence enhancement, hearsay, hearsay within
      hearsay, prosecutorial use of false testimony,
      prejudicial prosecutorial questioning, and improper
      prosecutorial arguments; (5) failed to call alibi
      witness Steve Conkle; (6) failed to call a medical
      expert witness; and (7) failed to adequately cross
      examine witnesses.

II.   Defendant was erroneously scored 25 points under
      OV 13 as to each count, and was misscored points
      under OV 7, OV 8, and OV 10 on counts one, two,
      and three, respectively, which causes defendant's
      guidelines range to decline on each count.
      Defendant must be resentenced.

III.  Prosecutorial misconduct deprived defendant of a
      fair trial, where (1) exculpatory evidence was
      suppressed, (2) the prosecutor used false testimony
      to obtain the convictions, (3) the prosecutor's
      questioning prejudiced the defense improperly, and
      (4) the prosecutor made improper arguments.

IV.   The cumulative effect of errors denied defendant a
      fair trial.

Petitioner's *pro se* supplemental brief also sought an evidentiary hearing in

the trial court on Petitioner's claims of ineffective assistance of counsel. (*See* ECF

#24-9 at 218, Pg. ID 1219.) The supplemental brief, however, did not include any

8

offers of proof to support the request for an evidentiary hearing.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *See People v. Szydlek*, No. 294567, 2011 WL 1564609 (Mich. Ct. App. Apr. 26, 2011). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. Petitioner's application raised the same claims he raised in the Michigan Court of Appeals and added a claim of ineffective assistance of appellate counsel. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *See People v. Szydlek*, 804 N.W.2d 332 (Mich. 2011) (Table).

Petitioner subsequently filed several motions in the trial court seeking various forms of relief. Specifically, Petitioner filed a "Nunc Pro Tunc Motion to Vacate Orders to Remit Prisoner Funds for Fines, Costs, and Assessments" and a "Motion to Amend Order to Remit Prisoner Funds for Fines, Costs, and Assessments," both of which were denied in July 2012.

After the trial court denied these motions, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for "lack of merit in the grounds presented." *People v. Szydlek*, No. 311747 (Mich. Ct. App. May 10, 2013).

9

Petitioner then applied for leave to appeal this decision in the Michigan Supreme Court, but the application was denied because the court was not persuaded that the questions presented should be reviewed. *See People v. Szydlek*, 838 N.W.2d 154 (Mich. 2013) (Table).

Petitioner now seeks habeas relief in this Court based on the claims he presented to the state courts in his supplemental *pro se* brief filed in the Michigan Court of Appeals during his direct appeal and in his post-judgment motions. Petitioner has also filed supplemental pleadings in this Court, raising additional arguments in support of these claims, as discussed below.

## GOVERNING LEGAL STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

10

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

Indeed, "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.

11

86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The United States Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Id.*

## **LEGAL ANALYSIS**

## **I.    Ineffective Assistance of Trial Counsel**

Petitioner's first claim is comprised of seven allegations of ineffective assistance of trial counsel. (*See, e.g.,* ECF #1 at 9, Pg. ID 9, ECF #9 at 9, Pg. ID 505, ECF #27 at 22, Pg. ID 1575, and ECF #40.) Respondent asserts that the state court adjudication of Petitioner's ineffective assistance of counsel claims was not unreasonable and relief is therefore barred under § 2254(d). The Court agrees.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-part test to determine whether a criminal defendant

12

petitioner has received the ineffective assistance of counsel.  First, a defendant must show that his counsel's performance was deficient. *See id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.  Second, the defendant must show "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*

To satisfy the performance prong of *Strickland*, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. A court's scrutiny of counsel's performance is highly deferential. *See id*. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden is on the defendant to overcome the presumption that the challenged action was sound trial strategy. *See id*. at 689.

To satisfy the prejudice prong of the *Strickland* test, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To be a reasonable probability, it must be sufficient to undermine confidence in the outcome. *See id*.

13

"This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 693).

"The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## A.    Petitioner's First, Second, and Fifth Allegations of Ineffective Assistance

Petitioner's first allegation of ineffective assistance of counsel asserts that his trial counsel failed to disclose a purported conflict of interest. Specifically, Petitioner asserts that his trial attorney also worked as a prosecutor at a local district court where Mavity had been previously prosecuted. Petitioner argues that Mavity had been treated with leniency in these prosecutions. Petitioner's second allegation asserts that his counsel failed to adequately investigate Mavity's criminal history, which Petitioner insists could have been used to impeach Mavity's credibility. Finally, Petitioner's fifth allegation asserts that his counsel

should have called Conkle as an alibi witness.

Petitioner raised each of these claims in his *pro se* supplemental brief on appeal. The Michigan Court of Appeals reviewed and rejected them for the same reason – there was no record evidence to support them:

> Defendant argues that counsel was ineffective for not disclosing a conflict of interest. According to defendant, counsel did prosecutorial work for the local district court, where Mavity had received leniency in multiple criminal cases. There is, however, no record evidence of any conflict of interest. Consequently, defendant has failed to prove the factual predicate of the claim.
>
> Defendant asserts that counsel was ineffective for failing to adequately investigate Mavity. He claims that counsel should have investigated Mavity's criminal record, extortion threats, medical records, and work records. Again, there is no record evidence to support the claim that counsel's investigation was inadequate. Defendant has failed to establish the factual predicate of the claim.
>
> [….]
>
> Defendant claims that counsel was ineffective for failing to call Steve Conkle as an alibi witness. The record contains no evidence that Conkle would testify as defendant claims. Absent such evidence, we will not second-guess counsel's decision not to call Conkle as a witness.

*Szydlek*, 2011 WL 1564609 at *5, 6-7 (internal citations omitted).

15

The state court's conclusion was not unreasonable. The *Strickland* standard plainly places the burden of proving defense counsel's ineffectiveness on the defendant, and Petitioner presented no record evidence to support his allegations to the state courts. It was therefore not unreasonable for the Michigan Court of Appeals to summarily reject the allegations as it did.

Under Michigan state law, when a criminal appellant wishes to raise a claim of ineffective assistance of counsel based on facts not contained in the existing record, he must request a so-called *Ginther* hearing. *See People v. Ginther*, 390 Mich. 436 (1973). A request for such an evidentiary hearing must be accompanied by affidavits or other offer of proof as to the evidence the defendant wishes to present at the hearing. MCR 7.211(C)(1). The Michigan Court Rules specifically require that a request for an evidentiary hearing be made in a separate motion. *See id*.

Here, Petitioner made no such motion in the Michigan Court of Appeals with respect to these allegations. Instead, Petitioner stated in conclusory terms at the end of his *pro se* brief that his case should be remanded for a hearing. Petitioner's "alternative request in [his] appellate brief for a *Ginther* hearing is not a timely motion for remand as required by MCR 7.211(C)(1)." *People v. Fisher*, No. 262961, 2007 WL 283799, at *2 n.2 (Mich. Ct. App. Feb. 1, 2007) (per

16

curiam); *see also People v. Carter*, No. 232862, 2003 WL 887594, at *4 (Mich. Ct. App. Mar. 6, 2003) (per curiam) (*Ginther* hearing not properly requested when request was made as alternative relief request in body of brief and request was included in neither statement of appellate claims nor a properly filed motion).

Moreover, Petitioner's *pro se* supplemental brief was not accompanied by any offer of proof to support these allegations. Petitioner did not proffer any evidence to the state courts that his defense counsel prosecuted cases in the circuit court (or was ever employed by the State of Michigan as a county prosecutor), that Mavity received lenient treatment, that Mavity had a criminal history that could have been used to impeach his credibility, or that Conkle would have testified that he was with Petitioner at the time of the incident. Petitioner's bare request for an evidentiary hearing at the end of his supplemental *pro se* brief was insufficient under state law to warrant a hearing on his claims. *See People v. Murray*, No. 239287, 2003 WL 22244699, at *4 n.4 (Mich. Ct. App. Sept. 30, 2003) (per curiam) ("MCR 7.211(C)(1)(a)(ii) specifically requires that a motion to remand 'must be supported by affidavit or other proof regarding the facts to be established at a hearing.' A request to remand, presented as proposed relief in a party's appellate brief, must also meet this preliminary threshold before this Court will grant relief."); *People v. Hawthorne*, No. 280289, 2009 WL 454927, at *2 n.1

17

(Mich. Ct. App. Feb. 24, 2009) (per curiam). Simply put, Petitioner's request in his *pro se* brief for an evidentiary hearing did not comply with state law requirements.

Furthermore, while Petitioner has filed supplemental pleadings in this Court to support his conflict of interest claim, (*see* ECF #27 at 22, Pg. ID 1575; ECF #40) this information was not presented to the state courts. Where, as here, the state courts adjudicated a claim on the merits, this Court cannot consider new materials not presented to those courts. *See Shoemaker v. Jones*, 600 Fed. App'x 979, 983 (6th Cir. 2015) (citing *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1400 n.7 (2011)).  In addition, the Court notes that even if it could consider this argument, it would not grant Petitioner habeas relief based on the alleged conflict.  Petitioner has not identified evidence in the record that supports his claim that his trial counsel had a conflict of interest.  The record shows that Petitioner's counsel was employed by a municipality to serve as a prosecutor in a state *district* court while the charges against the Petitioner were brought by the *county* prosecutor (an employee of the State of Michigan) in the state *circuit* court.

Finally, while Petitioner's appellate counsel did file a motion for remand in the Michigan Court of Appeals that was supported by an offer of proof, that motion related to other issues, *not* the three grounds discussed above that Petitioner raised in his *pro se* brief.  Accordingly, the state appellate court's summary rejection of

18

the allegations in Petitioner's *pro se* brief for want of proof did not involve an unreasonable application of *Strickland.*

### B.   Petitioner's Third Allegation of Ineffective Assistance

Petitioner's third allegation of ineffective assistance of counsel asserts that his trial counsel was ineffective for failing to object to the prosecutor's use of his prior criminal record. Petitioner argues that his trial attorney should have moved to suppress any mention of his (Petitioner's) prior convictions. The Michigan Court of Appeals reviewed this claim and concluded that while the prosecutor's use of Petitioner's criminal record was improper, and therefore Petitioner's counsel should have objected to its use, that the error nevertheless did not warrant relief:

> Defendant argues that counsel was ineffective for failing to object when the prosecutor questioned him about his past drug activities. Although we concluded that the prosecutor improperly questioned defendant about his prior drug activities, counsel's failure to object did not prejudice defendant. Defendant fails to show that, but for counsel's failure to object, there is a reasonable probability that the outcome of his trial would have been different.

*Szydlek*, 2011 WL 1564609, at *5.

The state appellate court's conclusion that the error of Petitioner's attorney did not warrant relief was not unreasonable. The improper questions regarding Petitioner's prior drug activities played a minor role at trial.  The prosecutor did

19

not mention them during either his opening statement or closing argument, and he never asked the jury to find that Petitioner was not credible because of these activities. (*See* July 6, 2009, Trial Tr., ECF #24-5 at 43-48, Pg. ID 812-817; July 7, 2009, Trial Tr., ECF 24-6 at 13-22, Pg. ID 944-953.)  Thus it was not unreasonable for the state appellate court to find that Petitioner had not demonstrated sufficient prejudice to be entitled to relief. Accordingly, the Court finds that Petitioner has failed to demonstrate entitlement to relief on this claim.

### C.    Petitioner's Fourth Allegation of Ineffective Assistance

Petitioner's fourth allegation of ineffective assistance of counsel is actually comprised of several separate factual bases. Petitioner claims that his counsel should have: (1) objected to his being sentenced as an habitual offender, (2) objected to the admission of hearsay, (3) objected to the prosecutor's use of false testimony, (4) objected to prejudicial prosecutorial questioning, and (5) objected to improper prosecutorial arguments. The Michigan Court of Appeals rejected these allegations as follows:

> Defendant contends that counsel was ineffective because he failed to object to defendant being sentenced as an habitual offender, third offense. Defendant claims that he should have been sentenced as an habitual offender, second offense, because his two prior felony convictions were obtained under a plea agreement and, therefore, only count as one offense. In support, defendant cites *People v. Tucker*, 181 Mich. App. 246, 258-259 (1989),

20

where this Court held that prior convictions obtained under a single plea bargain count as only one offense for purposes of the habitual offender statutes. However, defendant's reliance on *Tucker* is misplaced. Our holding in *Tucker* relied upon the Supreme Court's decision in *People v. Stoudemire*, 429 Mich. 262 (1987), which has been overruled by *People v. Gardner*, 482 Mich. 41 (2008). Indeed, our holding in Tucker is inconsistent with the Supreme Court's holding in *Gardner*, 482 Mich. at 68, that "Michigan's habitual offender laws clearly contemplate counting each prior felony conviction separately." Pursuant to *Gardner*, the trial court properly sentenced defendant as an habitual offender, third offense, MCL 769.11, because defendant had two prior convictions for delivery of a schedule four controlled substance in 1994. Counsel was not ineffective for failing to make a futile objection. *People v. Fike*, 228 Mich. App. 178, 182 (1998).

Defendant next argues that counsel was ineffective for not objecting to certain hearsay statements testified to by Steve Arnold. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless an exception applies. MRE 802. Contrary to defendant's assertion, Arnold did not give testimony about the observations of his wife. He explained that after receiving a telephone call from his wife about Mavity, he went to the intersection of Parview and Andersonville. Arnold also testified that Mavity told him that he had been tied up, beaten, and had things stolen from him at Greens Lake Apartments. Although Mavity's statements were hearsay, they were admissible under MRE 803(2) as an excited utterance. The statements related to a startling event, and they were made while Mavity was under the stress caused by the event. MRE

21

803(2). Counsel was not ineffective for failing to make futile objections. *Fike*, 228 Mich App at 182.

Defendant next claims that counsel was ineffective for failing to object to the prosecutor's use of false testimony, for failing to object when the prosecutor questioned him about the alleged extortion note, and for failing to object to the prosecutor's improper arguments during closing arguments. However, as already concluded, the record evidence fails to establish that the prosecutor presented any false testimony. Likewise, the prosecutor's questions about the alleged extortion note were proper, as were his arguments during closing arguments. Counsel was not ineffective for failing to make futile objections. *Fike*, 228 Mich. App. at 182.

*Szydlek*, 2011 WL 1564609, at \*6.

Thus, all of these allegations of ineffective assistance of counsel were rejected because the underlying objection was meritless. The state court of appeals held that Petitioner was properly sentenced under state law, that the evidence against him was admitted properly under state evidentiary law, and that the prosecutor had not committed misconduct. This Court will not second-guess the state court's determination of state law issues. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). As for the prosecutorial misconduct claims, as will be discussed below, it was not unreasonable for the state appellate court to conclude that none of those claims have merit. Counsel's failure to make a meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th

22

Cir. 2010). These allegations therefore do not warrant habeas relief.

### D.  Petitioner's Sixth Allegation of Ineffective Assistance

The substance of Petitioner's sixth allegation of ineffective assistance of trial counsel was raised in his appellate counsel's brief as well as his supplemental *pro se* brief. Petitioner argues that his trial counsel should have secured the attendance of Dr. Engelmann at trial. Petitioner alleges that Dr. Engelmann would have testified that Petitioner was physically incapable of assaulting Mavity as Mavity described. The Michigan Court of Appeals rejected this claim as follows:

> Defendant also claims that counsel was ineffective for failing to make arrangements for Dr. Theodore Engelmann, his personal physician, to testify at trial. According to defendant, Engelmann would testify that defendant was physically incapable of dragging Mavity. The record evidence establishes that Engelmann was subpoenaed by counsel to testify as a defense witness, that Engelmann failed to appear at trial, and that the trial court, when counsel could not guarantee that Engelmann would appear, decided to finish the trial. Defendant fails to specify how counsel's actions in attempting to secure the appearance of Engelmann were deficient. Moreover, Engelmann's failure to appear at trial did not deprive defendant of a substantial defense. *See People v. Daniel*, 207 Mich. App. 48, 58 (1994). Three witnesses testified that defendant suffers from back problems, is often in pain, and has trouble walking and lifting objects. Accordingly, the record evidence does not support the claim that counsel was ineffective for failing to call Engelmann as a witness.

23

*Szydlek*, 2011 WL 1564609, at *1.

The Michigan Court of Appeals did not unreasonably conclude that the actions of Petitioner's trial counsel "in attempting to secure the appearance of [Dr.] Engelmann were [not] deficient." *Id.* Petitioner's trial counsel did seek to secure the attendance of Dr. Engelmann at trial. In fact, an on-the-record exchange with the trial judge establishes that Petitioner's counsel worked with the prosecutor to have an agent of the state serve Dr. Engelmann with a trial subpoena, and Dr. Engelmann failed to comply. (*See, e.g.,* July 7, 2009, Trial Tr., ECF #24-6 at 6-7, Pg. ID 937-938.) The Court also notes that Petitioner's counsel did elicit testimony from multiple other witnesses about Petitioner's medical condition. On such a record, it was not unreasonable for the Michigan Court of Appeals to conclude that Petitioner's trial counsel was not ineffective.

### E.    Petitioner's Seventh Allegation of Ineffective Assistance

Petitioner's final allegation of ineffective assistance of trial counsel challenges his trial attorney's cross-examination of Mavity, police detective MacDonald ("Detective MacDonald"), and Dr. Lgubisa Dragovic ("Dr. Dragovic"). Petitioner argues that his trial counsel should have challenged Mavity with his prior criminal record, asked for Mavity to produce phone records for the stolen phone, and asked him for proof that he had prescription medication and a

24

gold necklace. Petitioner also alleges that trial counsel should have asked Mavity and Detective MacDonald if Mavity acted as Detective MacDonald's confidential informant, and asked additional questions about Mavity's first contact with police regarding the crime. Petitioner finally suggests that counsel should have asked Dr. Dragovic about other possible causes of Mavity's injuries. The Michigan Court of Appeals rejected the claims as follows:

> Defendant asserts that counsel failed to adequately cross-examine Mavity, MacDonald, and Dr. Dragovic. Decisions concerning the cross-examination of the witnesses are a matter of trial strategy. *In re Ayres*, 239 Mich. App. 8, 23 (1999). A review of the record does not establish that counsel's cross-examination of the witnesses was unreasonable or unsound.

*Szydlek*, 2011 WL 1564609, at *6.

This section in the court of appeals opinion, while short, did not reach an unreasonable conclusion. This Court has reviewed the record. Defense counsel's cross-examination of these witnesses was admittedly brief. (See July 6, 2009, Trial Tr. at 77-83, Pg. ID 846-852 (Mavity); 101-105, Pg. ID 870-874 (Detective MacDonald); 118-125, Pg. ID 887-894 (Dr. Dragovic). But it does not follow that the examinations fell so far below the level of effectiveness that the court of appeals' conclusion was unreasonable.

25

The record shows that counsel attacked Mavity on cross-examination with the fact that Mavity waited more than four days to go to the police, though he claimed he only waited a day and a half. Counsel also elicited denials from Mavity that Petitioner took him to locations in White Lake and Detroit, which he later used in closing argument.  On cross-examination of Detective MacDonald, counsel had Detective MacDonald admit that he did not perform any forensic testing at Petitioner's apartment, and that it was police officers who told Mavity to go to the hospital. Counsel also obtained testimony from Dr. Dragovic on cross-examination that Dr. Dragovic could not ascertain the age of Mavity's injuries from the photographs, and that one picture of Mavity suggested recent needle marks, contrary to Mavity's testimony that it depicted an old injury.

Though the challenges made on cross-examination of these witnesses were brief, Petitioner's trial counsel largely presented Petitioner's defense through Petitioner's own testimony regarding the events on the date of the incident. Then, in closing argument, counsel suggested that Mavity dealt prescription medications, and on the night of the incident Petitioner was driving him to various locations in Detroit and White Lake while Mavity dealt and used drugs. Counsel suggested that Mavity knew Petitioner had large quantities of pain medications for his back problems, and that Mavity was upset that Petitioner refused to cooperate in his

26

drug dealing. Counsel insinuated that Mavity was probably beaten up as a result of dealing drugs after he left Petitioner and Conkle, and that Mavity placed the blame on Petitioner in revenge for Petitioner's refusal to cooperate. Counsel indicated that there was no forensic evidence supporting Mavity's account of what occurred at Petitioner's apartment and that Mavity waited four days to go to the police. Counsel concluded that the case therefore came down to Mavity's word against Petitioner's, and given the evidence that Mavity was a drug user and dealer, the jury should not find his testimony credible beyond a reasonable doubt.

The Court is satisfied after review of the transcript that the decision of the state appellate court rejecting this claim on the merits was not an unreasonable application of the *Strickland* standard. The claim will therefore be denied.

## II. Prosecutorial Misconduct

Petitioner's second habeas claim asserts four allegations of prosecutorial misconduct. (*See, e.g.,* ECF #1 at 12, Pg. ID 12; ECF #9 at 12, Pg. ID 508.) Respondent contends that this claim is defaulted because the errors were not preserved at trial.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is

27

adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits, especially because Petitioner alleges that his trial counsel was ineffective for failing to preserve these claims. Thus, the Court will now examine each of Petitioner's claims of prosecution misconduct in turn.

### A.    Suppression of Exculpatory Evidence

Petitioner's first allegation of prosecutorial misconduct asserts that the prosecutor withheld Mavity's prior criminal history from the defense. The state appellate court determined the claim was not preserved for review, and it also concluded in the alternative that the claim was without merit:

28

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v. Mesik* (On Reconsideration), 285 Mich. App. 535, 541; 775 N.W.2d 857 (2009). Because defendant failed to object to the alleged misconduct, we review the claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *People v. Cox*, 468 Mich. App. 440, 451; 709 N.W.2d 152 (2005).

Defendant first argues that the prosecutor suppressed exculpatory evidence, e.g., Mavity's criminal record. However, defendant has not established that the prosecutor improperly suppressed Mavity's criminal record under *Brady v. Maryland*, 737 U.S. 83. [String citation omitted.] Specifically, defendant has not demonstrated that he could not have obtained the criminal record himself through reasonable diligence.

*Szydlek*, 2011 WL 1564609, at *4.

With respect to Petitioner's allegation of prosecutorial misconduct, *Brady v. Maryland*, 737 U.S. 83 (1963) provides the "clearly established federal law" relevant to the Court's analysis. *Brady* holds that the government's failure to disclose evidence favorable to the accused in a criminal case violates due process if the evidence is material to guilt or sentencing. *Id.* at 87. *Giglio v. United States*, 405 U.S. 150 (1972), extends the *Brady* rule "to evidence which could be used to impeach the credibility of a government witness." *United States v. Hayes*, 376 F. Supp. 2d 736, 738 (E.D. Mich. 2005) (citing *Giglio*, 405 at 154-155). "Evidence is 'material' for purposes of *Brady* and *Giglio* if 'there is a reasonable probability

29

that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Hayes*, 376 F. Supp. 2d 736, 738 (E.D. Mich. 2005) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433-434 (1995)).

The Michigan Court of Appeals' decision did not unreasonably apply the *Brady* standard. "[T]here is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source." *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). This includes information that is available from public records, including the criminal record of a witness. *See Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011). Accordingly, even if it is true that Mavity had a criminal record that was not disclosed to the defense prior to trial, the rejection of Petitioner's *Brady* claim was not unreasonable because Mavity's records were publicly available.

Petitioner also presents a second basis for a *Brady* claim. (*See* ECF #27 at 25, Pg. ID 1578.) Petitioner claims that the prosecutor withheld evidence of forensic testing performed at his apartment. In support of this contention, Petitioner presents a letter from the prosecutor to defense counsel that notes that it was enclosing a report from the forensic laboratory. The forensic report itself, however, does not contain any exculpatory evidence. (*See* ECF #41-3.) It states simply that

30

on March 12, 2009, Lab Specialist William Foreman met with Detective MacDonald and assisted with the investigation at Petitioner's apartment. The report notes that the apartment had two bedrooms, was on the second floor, was on the south side of the building, and that there was weightlifting equipment and construction tools inside. The report also stated that the apartment was searched and that Detective MacDonald took photographs. Petitioner has not shown how any of this information was exculpatory. Accordingly, even assuming the report was suppressed, and it appears that it was not, Petitioner has not demonstrated any entitlement to habeas relief.

### B. The Use of False Testimony

Petitioner next asserts that the prosecution committed misconduct when it used false testimony in two instances. First, Petitioner asserts that Detective MacDonald lied when he testified that the police did not conduct any forensic tests in his apartment. Second, Petitioner says that that Mavity and Doyon lied when they testified that they knocked on Petitioner's apartment door days after the incident to retrieve Mavity's property. The Michigan Court of Appeals rejected the claims as follows:

> Defendant next claims that the prosecutor improperly presented false evidence. Prosecutors may not knowingly present false evidence, and, if they do, they must correct

31

it. *People v. Lester*, 232 Mich. App. 262, 276; 591 N.W.2d 267 (1998). However, a prosecutor is not compelled to disbelieve his own witness and correct the witness's testimony simply because certain testimony is contradicted by another witness. *Id.* at 278-279. A defendant is entitled to a new trial only where there is a reasonable likelihood that false testimony could have affected the judgment of the jury. *Id.* at 279-280. Here, the prosecutor did not present any false testimony. Nothing in the record supports defendant's contention that Detective MacDonald testified falsely about not performing any testing on items taken from defendant's apartment. And, while Allen Doyon's testimony was inconsistent with Mavity's testimony about whether they approached defendant's apartment days after the robbery, the prosecutor was not compelled to disbelieve Doyon's testimony or correct it because of one minor inconsistency. Moreover, the inconsistency related to a collateral matter; whether Mavity and Doyon approached defendant's inconsistency related to a collateral matter; whether Mavity and Doyon approached defendant's apartment was of no consequence to the issue of whether defendant committed the charged crimes. There is no reasonable likelihood that Doyon's testimony affected the judgment of the jury.

*Szydlek*, 2011 WL 1564609, at *4.

The Michigan Court of Appeals' adjudication of Petitioner's false-testimony claims was not unreasonable. Prosecutors may not deliberately deceive a court or jurors by presenting evidence that they know is false. *See Giglio*, 405 U.S. at 153. Nor may they allow false testimony to go uncorrected when it appears. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). But to prevail on a claim that the prosecutor

relied on false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *See Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012); *see also Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). Mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor. *See Coe*, 161 F. 3d at 343. In addition, the fact that a witness contradicts himself or herself or changes his or her story does not establish perjury. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

Here, Detective MacDonald testified that he did not personally conduct any forensic testing at Petitioner's apartment. Petitioner has not shown that this testimony was false. While a forensic evidence technician may have gone to the apartment with MacDonald – though the letter referred to above suggested he did not perform tests – there is no evidence that MacDonald performed any tests. With respect to inconsistencies between Mavity and Doyon, there is no evidence that the prosecutor knowingly presented any false testimony. Mavity and Doyon gave somewhat different accounts of Mavity's attempts to retrieve his property from Petitioner prior to going to police. The presentation of both accounts was therefore appropriate, and the Michigan Court of Appeals' rejection of the Petitioner's claim of misconduct on this ground did not violate clearly established Supreme Court

33

law.

### C.      Prejudicial Questioning

Petitioner asserts that the prosecutor committed misconduct during cross-examination. The Michigan Court of Appeals rejected the claim as follows:

> Defendant argues that the prosecutor improperly cross-examined him about the alleged extortion note left by Mavity and a prior conviction. With regard to the prosecutor's cross-examination about the alleged extortion note, the questioning was proper. The inquiry was responsive to defendant's direct examination testimony. *People v. Jones*, 73 Mich. App. 107, 110 (1976). The inquiry was also probative of defendant's credibility, which is always a material issue during trial. *People v. Mills*, 450 Mich. App. 61, 72; 537 N.W.2d 909 (1995), mod. 450 Mich. 1212 (1995). With regard to the prosecutor's questioning of defendant about his past involvement with illegal drugs, the questioning was improper. Defendant did not open the door to this issue during direct examination, and the questioning was not proper under the rules of evidence for purposes or impeachment, MRE 608(b); MRE 609(a), or proving character, MRE 404(b); MRE 405(b). Nonetheless, defendant fails to establish that the improper questioning affected his substantial rights. *Cox*, 268 Mich. App. at 451.

*Szydlek*, 2011 WL 1564609, at *5.

Again, nothing about this decision constitutes an unreasonable application of clearly established Supreme Court law. Petitioner has cited no authority, let alone clearly established Supreme Court law, that supports his claim for relief.

34

And while the state appellate court concluded that the prosecutor's questioning about Petitioner's prior drug activity was improper, it concluded that this questioning did not warrant relief. Petitioner has not cited any Supreme Court precedent that is inconsistent with the state appellate court's ruling. Simply put, the Michigan Court of Appeals' conclusion that Petitioner failed to establish that any improper questioning affected his substantial rights was not an unreasonable application of clearly established federal law. Petitioner's claim therefore fails under § 2254(d).

### D.    Improper Arguments

Petitioner's final allegation of prosecutorial misconduct asserts that it was improper for the prosecutor to ask the jury to compare Mavity's testimony, which was corroborated by Doyon, to Petitioner's testimony. The state appellate court rejected the claim as follows:

> Defendant's final prosecutorial misconduct argument is that the prosecutor improperly argued during closing arguments that Mavity's testimony was corroborated by Doyon's testimony and that defendant had not produced corroborating evidence, particularly the alleged extortion note. The prosecutor's argument that Mavity's testimony was corroborated by Doyon's testimony was proper. The prosecutor opined that defendant's testimony was very different from Mavity's and argued that the jury need to consider whose testimony was corroborated in making its credibility determination. The prosecutor then explained

35

> how Doyon's testimony about Mavity's injuries and demeanor was consistent with Mavity's testimony. A prosecutor may comment on evidence and make arguments about the credibility of witnesses where there is conflicting testimony and the defendant's guilt or innocence depends on the veracity of the witnesses. *People v. Flanagan*, 129 Mich. App. 786, 796; 342 N.W.2d 609 (1983). The prosecutor's arguments that defendant's testimony was not corroborated and that the alleged extortion not did not exist were also proper. When a defendant advances a theory of the case as an alternative to the theory advanced by the prosecution, a prosecutor may point out the weakness in the defendant's case by commenting on the defendant's failure to produce corroborating evidence. *People v. Fields*, 450 Mich. 94, 112; 538 N.W.2d 356 (1995); *People v. Jackson*, 108 Mich. App. 346, 351-352; 310 N.W.2d 238 (1981). Indeed, a prosecutor may argue that a defendant testified untruthfully.

*Szydlek*, 2011 WL 1564609, at *5.

The "clearly established Federal law" relevant to the Court's review of this claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).   In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).   Moreover, "[a] prosecutor may comment on a defendant's failure to call witnesses or offer other evidence to support his factual theories so long as the

36

prosecutor's comment does not implicate a defendant's right not to testify." *Skinner v. McLemore*, 551 F. Supp. 2d 627, 646 (E.D. Mich. 2007). In addition, a prosecutor may also argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000).

The Court has reviewed the prosecutor's closing argument. (*See* July 7, 2009, Trial Tr., ECF #24-6 at 13-22, 25-29, Pg. ID 944-953 956-960.)  It was not unreasonable for the Michigan Court of Appeals to conclude that the challenged parts of the prosecutor's closing argument did not warrant relief. Petitioner is therefore not entitled to relief on his claim that the prosecutor made improper remarks to the jury.

## III.   Petitioner's Claim Regarding the Juror's Oath at Trial

According to Petitioner, the oath the jurors received at the start of his trial did not comply with Michigan law, and accordingly, his subsequent conviction was invalid.  (*See* ECF #45 at 3, Pg. ID 2202.)  Petitioner is not entitled to habeas relief on this ground.

First, this Court cannot grant habeas relief for errors of state law.  *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).   Second, Petitioner has not cited any United States Supreme Court cases that require a criminal jury to swear a specific oath as a matter of federal constitutional law.  Thus, even if the oath was defective

37

under Michigan law, petitioner is not entitled to federal habeas relief on this claim. Finally, and in any event, the Court has reviewed the oath the jury received (*see* July 6, 2009, Trial Tr., ECF #24-5 at 39, Pg. ID 808),[4] and while it did not comply word-for-word with the requirements of Michigan law (*see* MCL §§ 768.14, 768.15), the Court concludes the oath properly informed the jurors of their responsibility to justly and fairly render a verdict at the conclusion of Petitioner's trial.  Thus, Petitioner is not entitled to relief on the basis that his jury was improperly sworn.

## IV.   Cumulative Error

Petitioner alleges that he is entitled to habeas relief because the cumulative effect of trial errors deprived him of a fair trial and due process of law.  (*See, e.g.,* ECF #1 at 14, Pg. ID 14; ECF #9 at 14, Pg. ID 14.)  On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) Therefore, Petitioner is not entitled to relief on this claim.

---

[4] The jurors swore the following oath: "Do you solely swear or affirm that in this action now before the court, you will justly decide the questions submitted to you, and unless you are discharged by the court from further deliberation, you will render a true verdict and that you will render your verdict only on the evidence introduced in accordance with instructions of the court?"   (July 6, 2009, Trial Tr., ECF #24-5 at 39, Pg. ID 808)

## V.   State Imposition of Financial Barrier Restricting Availability of Appellate Review

Petitioner next claims that he was denied access to the courts when the trial court entered an order to collect attorney fees and costs following his trial.  (*See* ECF #27 at 7, 12, Pg. ID 1560, 1565.)  Respondent notes that the federal aspects of this claim were not presented to the state courts. Even assuming Respondent is correct, this Court is nevertheless permitted to reach the merits of the unexhausted claim and reject it. *See* 28 U.S.C. § 2254(b)(2).

Indigent criminal defendants have a constitutional right of access to the courts. *See Turner v. Safley*, 482 U.S. 78, 84 (1987) (citing *Johnson v. Avery*, 393 U.S. 483 (1969)) (First Amendment); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (Equal Protection Clause); *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) (Due Process Clause). To satisfy the right to access to the courts, the State must provide a prisoner with the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 354-56 (1996). Here, despite the order to collect attorney fees and costs, Petitioner has not shown that he has been denied access to the courts. Petitioner has been able to file *pro se* pleadings challenging his conviction in the state courts, and

39

he has had no difficulty filing pleadings with this Court. This claim is devoid of merit.

To the extent Petitioner claims that the state court order of reimbursement violates state law, the claim is not cognizable in a federal habeas action.

Because none of Petitioner's habeas claim merit relief, the Petition will be denied.

## VI.   Petitioner's Motion for Injunctive Relief

Petitioner's motion for injunctive relief concerns Petitioner's serious medical condition, and it alleges that he is receiving inadequate care in the Michigan Department of Corrections. (*See* ECF #42.) Because Petitioner's habeas claims are without merit, to the extent the motion seeks bond pending a grant of habeas relief, the motion is denied as moot. If Petitioner wishes to add claims to the Petition regarding his medical care, such claims are not cognizable in a habeas corpus action, which concerns only the fact or duration of Petitioner's confinement, and not the conditions of confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## CERTIFICATE OF APPEALABILITY

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. §

40

2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

As discussed above, the Court believes that Petitioner is not entitled to habeas relief on any of the claims in his Petition. Nor does it believe that reasonable jurists could debate whether the petition should have been resolved in a different manner. Therefore, the Court will deny a certificate of appealability.

The Court will, however, grant permission to appeal *in forma pauperis* because any appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## CONCLUSION

Accordingly, for the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** the Petition for a writ of habeas corpus, (2) **DENIES** a certificate of appealability, (3) **GRANTS** permission to appeal in forma pauperis, (4) **GRANTS** Petitioner's motions to supplement (ECF ## 40, 45), and (5) **DENIES** Petitioner's

motion for injunctive relief (ECF #42).

**IT SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 4, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 4, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113